# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNA HOEHNE | : |
| | : |
| Plaintiff, | : |
| v. | : CASE NO. 06-2227 (RBW) |
| | : |
| WASHINGTON METROPOLITAN AREA | : |
| TRANSIT AUTHORITY    ("WMATA") | : |
| | : |
| Defendant | : |

### DEFENDANT WMATA'S 26(a)(2) STATEMENT

Pursuant to Rule 26(a)(2), Defendant WMATA respectfully submits its list of expert witnesses, including areas of expertise, proposed testimony and the bases therefor:

1)      Dr. Richard H. Conant, M.D., Chevy Chase Building, 5530 Wisconsin Ave, Suite 604, Chevy Chase, MD 20815-4470 , phone number 301-657-9876.

Dr. Conant is a medical doctor specializing in orthopaedics and orthopaedic surgery. Based on his examination of  Plaintiff, her medical records and discovery responses Dr. Conant will testify regarding her degree of injury, including issues of any permanency, suffered by Plaintiff attributable to the incident mentioned in the Complaint, as well as the necessity of treatment and the reasonableness thereof.

Dr. Conant will opine that Plaintiff received an extraordinary amount of treatment for an expanding list of complaints that are disproportionate to the objective findings.  Specifically, Dr. Conant will opine there is no causal relationship between the accident and the Plaintiff's right knee surgery or her left shoulder surgery.  Additionally, he will testify  that Plaintiff had residual right knee problems as a result of Plaintiff's previous, pre-accident lateral miniscal tear as well as pre-existing structural, degenerative changes to her left shoulder.   Dr. Conant is expected to

testify that Dr. Lavine's permanency ratings are not substantiated by the AMA Guidelines.

Additionally, Dr. Conant's opinion is that Plaintiff's subjective complaints regarding her neck and left upper extremity are disproportionate to the objective findings, which include a negative MRI and negative EMG..  The results of the arthroscopic evaluation to her right wrist are incidental findings only.   Plaintiff received no head injury in this accident sufficient to aggravate any pre-existing subarachnoid cyst that was incidentally identified on her MRI study, and Plaintiff has a clear history of pre-existing migraines.

Dr. Conant will opine that Plaintiff has sustained no permanent impairment of function or need for any future treatment related to her accident with a WMATA bus and that her clinical pattern suggests symptom magnification.  All opinions are rendered to a reasonable degree of medical certainty.

Dr. Conant charges $385/hour. His more detailed report is attached hereto as Exhibit 1 and his Curriculum Vitae and list of the last four years of court testimony are attached hereto in Exhibit 2 and 3, pursuant to the Rules of this Court.

Respectfully submitted,

WASHINGTON METROPOLITAN AREA
 TRANSIT AUTHORITY

__/s/ _____
Janice L. Cole
Associate General Counsel-WMATA
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-2543

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Defendant WMATA's 26(a)(2)** was sent via electronic court service this 5th of September 2007  to:

Edward L. Norwind, #936393
2273 Research Boulevard
Suite 200
Rockville, Maryland   20850
(301) 948-3800
Attorneys for Plaintiff


_____/s/_____
Janice L. Cole

American Board of
Orthopaedic Surgery

American Academy of
Orthopaedic Surgeons

## Richard H. Conant, M.D., F.A.C.S.

*Chevy Chase Building*
*5530 Wisconsin Avenue · Suite 1660*
*Chevy Chase, Maryland · 20815-4430*

*301-657-9876 · (Fax) 664-5979*

## INDEPENDENT MEDICAL EVALUATION

Re:              **Jena Hoehne**
D/Injury:        **03/16/2005**
D/Exam:          **08/23/2007**
Civil Action #:  **06-2227**

**INTRODUCTION:**  Jena Hoehne, a twenty-six year-old female executive assistant for a Congressman, stated that she was struck twice on the right side of her body by a Metrobus as she was walking across the intersection of First and D Streets NE, Washington DC, on March 16, 2005.  She stated that she struck the pavement with her right hand, right knee, and the left side of her body as she fell on her left side in a "twisted position." She was transported from the scene by ambulance to the Washington Hospital Center.

**PAST MEDICAL HISTORY:**    According to medical records from Nebraska Orthopaedics and Sports Medicine, Robert Dugas, M.D. performed arthroscopic surgery of her right knee on March 25, 1997, regarding a basketball injury.  He identified a partial thickness tear of the anterior horn of the lateral meniscus, with partial detachment of the meniscal capsular ligament, and an injury of the anterior cruciate ligament with a ten to fifteen percent area of tearing.  His progress note of December 19, 1997 referenced effusions, a mild degree of right knee ACL laxity, bilateral patellar tendinitis, and right knee arthralgia.

On March 5, 2001, Dr. Dugas performed left ankle arthroscopic surgery for treatment of a post-traumatic non-union of an osteochondral fracture of the left talus, chondromalacia of the talus, and tibial fibular synovitis.

At the time of this IME, Ms. Hoehne stated that she has had no ongoing problems with her right knee, and that she has had "only a handful of migraine headaches" prior to the bus accident.

**PRESENT ILLNESS:**  According to the medical records from the Washington Hospital Center, Ms. Hoehne was admitted to the hospital on March 16, 2005, with "multiple contusions and abrasions." There were no recorded neurological concerns; she was alert and oriented. Examination of her shoulders, wrists, elbows, hips, and knees revealed normal muscle strength. Radiographic studies of her cervical, thoracic, and lumbar spines

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Two

right knee, right wrist, and pelvis, as well as CT studies of her head, abdomen, and pelvis were negative for signs of acute trauma. Ms. Hoehne was released in good condition on March 17, 2005.

On March 21, 2005, she presented to Peter E. Lavine, M.D. for an orthopedic consultation regarding complaints in her neck, right knee, right wrist, and lower back. Dr. Lavine reported a normal neurological status. He made no mention of any headaches or any complaints referable to her left elbow. He prescribed physical therapy, Naprosyn, and Percocet.

On March 23, 2005, Robert W. Dugas, M.D., her prior orthopedic surgeon in Lincoln, Nebraska, referenced her statement that a bus had hit her while she was "crossing a street and talking on her cellphone." After recording an assessment of "cervical neck sprain/strain, right wrist sprain, rule out navicular fracture, right knee contusion and sprain, and left knee contusion, Dr. Dugas concluded that there did not appear to be any bony deformities or ligamentous injuries associated with her symptoms, and that her "bilateral knee pain should resolve." He expressed some concern regarding a possible navicular fracture of her right wrist, and prescribed physical therapy.

After attending seven therapy sessions at Platte Valley Physical Therapy, between March 24, 2005, and April 1, 2005, Ms. Hoehne returned to see Dr. Lavine on April 4, 2005. He referenced complaints involving her right knee, left wrist, and some numbness into the left arm and fingers. He continued to make no mention of the left elbow or of any headaches.

Evaluation of her left shoulder revealed some soreness and tightness, with a good range of motion, and good strength of the rotator cuff. The biceps tendon was the site of maximum sensitivity. He made note of increased ranges of motion, decreased pain, and decreased tightness involving her neck and back. There were no neurological deficits. After recording normal MRI and normal flexion-extension films of her neck, he discussed conservative measures.

After attending six physical therapy sessions at Physical Therapy and Sports Medicine between April 6, 2005 and April 18, 2005, Ms. Hoehne was reexamined by Dr. Lavine on April 18, 2005. He reported that her that her left shoulder appeared to be the site of her worst symptoms, but that her range of motion had improved. She continued to complain of significant pain in her knee, especially along the medial joint line, but there was less swelling and an improved range of motion. He made no mention of the lateral compartment of her knee, her left elbow, headaches, or any neurological concerns. He reported that her neck was much better.

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Three

MRI studies of the right wrist and of the left shoulder, ordered by Dr. Lavine, were performed at Washington Radiology Associates on April 28, 2005. The wrist study revealed a "DISI instability pattern with injury of the deep dorsal intrinsic ligaments and partial tearing of the scapholunate ligaments without complete disruption." Iincidental note was made of some "thickening and edema of the median nerve."

The left shoulder MRI study was considered to be unremarkable except for changes of mild impingement, associated with a "slightly low-lying acromion and fairly early changes of AC joint arthrosis and cystic changes in the area of the posterior humeral head." The rotator cuff and subscapularis tendons were intact. The long head of the biceps tendon was normal. There was no evidence of any instability, fracture, or joint effusion.

Ms. Hoehne then attended four additional therapy sessions between April 20, 2005, and April 27, 2005. On May 2, 2005, Dr. Lavine referenced left shoulder soreness as being the primary complaint. He again noted a good range of motion, good strength of the rotator cuff, and no instability. He reported that her right knee, her second most significant complaint, revealed some medial and lateral jointline tenderness with no swelling. He reported her wrist discomfort to be somewhat better. He also noted some soreness on the left side of her neck. "The arm pain seemed to have improved and dissipated." Dr. Lavine made initial reference to headaches. He referred her to Dr. Richard Barth for an evaluation of her wrist.

In his consultation report of May 4, 2005, Richard W. Barth, M.D., recommended an arthroscopic evaluation of her right wrist to rule out a "partial scapholunate ligament injury and a TFCC tear." In his operative report from Sibley Memorial Hospital, on May 19, 2005, Dr. Barth reported that the scaphoid ligament and the TFCC were intact. He performed a limited synovectomy, and debrided a hypertrophied dorsal capsule and a grade I chondral lesion of the hamate.

Ms. Hoehne then attended six additional therapy sessions between May 2, 2005 and May 23, 2005, on which date Dr. Lavine reported her main complaint to be in the area of her right knee, with soreness and tenderness in the area of the medial jointline. He made no reference to the lateral compartment as the site of any symptomatology. She also continued to complain of anterior left shoulder pain. He indicated that her neck and back were improved, with no significant residual symptoms. It was his understanding that the results of Dr. Barth's arthroscopic procedure "were encouraging." Dr. Lavine made no reference to headaches, or to the left elbow as a site of any clinical concern.

The MRI of the right knee, performed at WRA on May 27, 2005, revealed "tearing of the

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Four

periphery of the posterior horn of the medial meniscus and edema of the anterior tibial spine." There was no reference to any abnormalities involving the lateral compartment.

After initiating physical therapy for her wrist at Physical Therapy and Sports Medicine on June 2, 2005, she returned to see Dr. Lavine on June 3, 2005. Her right knee represented her primary complaint. Her second complaint was that of left shoulder pain, her third complaint was that of neck pain, and her fourth complaint was that of wrist pain. Dr. Lavine concluded that the tear of the medial meniscus, identified on the MRI study, was "likely the cause of her persistent knee pain despite conservative treatment."

After attending therapy sessions for her wrist until June 22, 2005, Ms. Hoehne underwent arthroscopic surgery of her right knee by Dr. Lavine at the Massachusetts Avenue Surgery Center on June 24, 2005. After failing to confirm any abnormalities involving the medial meniscus, Dr.Lavine resected a medial plica, and performed a limited chondroplasty for chondromalacia of the lateral tibial plateau. He also indicated that the "anterior cruciate ligament looked peculiar as if she had had a previous injury with slight laxity of the ligament, and some narrowing and tightness of the intercondylar notch."

While being followed by Dr. Lavine postoperatively, Ms. Hoehne attended nine therapy sessions between June 27, 2005, and August 3, 2005, on which date Dr. Lavine reported that she was making good progress with less knee pain and a lack of 10 degrees of knee flexion. Ms. Hoehne informed Dr. Lavine that her neck soreness represented the worst problem at that time, and that she was having radiating symptoms up to her head giving her headaches, and numbness and tingling in her left arm. Dr. Lavine recommended additional therapy with the expectation that she would reach maximum medical improvement by the first of October.

Ms. Hoehne then attended seven additional therapy sessions between August 8, 2005, and September 7, 2005, on which date Dr. Lavine recorded complaints of persistent neck pain, especially across the left trapezius and levator scapulae, as well as complaints of left arm numbness that would occur for about two to ten minutes once a day. He reported that her knee was much better with "occasional tenderness, but not so much, no swelling, almost full range of motion, and no lateral jointline tenderness or instability." He reported a finding of some tightness and soreness of the paraspinal musculature of the cervical spine, and a normal neurological status. He recommended additional therapy for her neck and back.

After attending additional therapy sessions on September 14, 2005, and September 16, 2005, she informed Dr. Lavine, on October 10, 2005, that her primary complaints were discomfort in the left trapezius, and some numbness and paresthesias in her left hand. Dr.

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Five

Lavine noted that she had been performing full time full duty work, and that her physical findings were limited to soreness along the trapezius. After noting a normal neurological status, Dr. Lavine recommended a home program and Naprosyn as alternative treatment to any further physical therapy. He made no reference to any problems with her left elbow or any headaches.

On October 31, 2005, Dr. Lavine recorded a full range of motion of her shoulder with supple muscles, good rotator cuff strength, and negative impingement testing. The cervical spine revealed a full range of motion with no tightness. Her neurological status was intact. He reported some discomfort to deep palpation in the buttock area, but noted "no apparent hip pathology or lumbar spine pathology clinically." Dr. Lavine suggested a continuation of her home exercise program and over-the-counter anti-inflammatory medications.

In correspondence to Jeffrey Wigodsky, Esq., on November 30, 2005, Dr. Barth recorded her complaints of "persistent achiness, soreness, fatigue, and a sense of her right wrist and hand being tired, and discomfort over the radial and dorsoulnar aspects of her wrist." His physical examination revealed full and symmetric motion of her right wrist, with some discomfort at the extremes of motion and some areas of tenderness. After concluding that she had reached maximum medical improvement, Dr. Barth submitted a permanency rating based on a reported loss of strength in her right hand.

On December 7, 2005, Dr. Lavine, after reporting complaints of neck and left shoulder pain, reported examination findings of some soreness, with a good range of shoulder motion, good rotator cuff strength, and negative impingement testing. He recommended further home measures for biceps tendonitis and insertional tendinitis into the scapula.

On January 11, 2006, in response to her complaints of left-sided neck and shoulder discomfort, and "radicular symptoms, including numbness and tingling down her left arm, all the way down to the level of the wrist and hand," Dr. Lavine recommended electrodiagnostic studies. In his report from the Neurology Center on January 26, 2006, V. John Blazina, M.D., reported that there was no evidence of any cervical radiculopathy brachial plexopathy, or peripheral neuropathy involving the radial, ulnar, or median nerves.

On February 6, 2006, Dr. Lavine reported that her physical examination was essentially unchanged, with good range of neck and left shoulder motion, and no neurological deficits.

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Six

After concluding that he "really cannot explain her persistent radicular symptoms in the face of a negative MRI and negative EMG," Dr. Lavine prescribed Lyrica. In a "discharge summary and disability rating" report submitted on February 7, 2006, Dr. Lavine concluded that "she had sustained a myofascial sprain of the paraspinal musculature of her cervical and lumbosacral spines, right wrist and right knee injuries, bruises and contusions across the left iliac crest and left patella, and a variety of aches and pains." He considered it "critically important that she had an intact scapholunate ligament and triangular fibrocartilage complex (right wrist)." He also referenced chondromalacia of the lateral tibial plateau and the medial plica. Utilizing the *Fourth Edition of the AMA Guides*, he submitted permanency ratings of her right knee, based on "chondromalacia findings of the lateral tibial plateau according to page 83/table 62...and synovectomy of the medial plica according to page 85/table 64." His summary report contained no reference to headaches, her left elbow, or to any suspected ulnar neuropathy.

On March 10, 2006, after recording her rejection of his recommendation for an injection of cortisone for biceps tendonitis, Dr. Lavine recommended a neurological consultation regarding her left upper extremity symptoms. In his report from the Neurology Center on March 27, 2006, Rhanni N. Herzfeld, M.D., recorded complaints of neck stiffness, headaches, and numbness and tingling in her shoulder radiating to her fingertips, primarily affecting the fourth and fifth digits. He reported that her head, spine, and neurological examinations were normal. He recommended a repeat MRI study of the cervical spine and a carotid ultrasound.

On April 25, 2006, Dr. Herzfeld informed Dr. Lavine that her carotid study was normal and that "she did have migraines prior to the accident, however, now they are worse." He renewed her Imitrex for migraine control. Dr. Herzfeld also noted the MRI findings of an incompletely imaged posterior fossa arachnoid cyst, with no evidence of disc herniation, stenosis, or neural foraminal narrowing. After reporting additional normal examinations of her head, spine, and neurological system. Dr. Herzfeld recommended physical therapy and MRI studies of her brain and of her neck.

The MRI of the cervical spine, performed at WRA on April 10, 2006, was reportedly unremarkable. The findings in the posterior fossa were considered to represent a "small incidental arachnoid cyst." A contrast enhanced brain MRI, on May 11, 2006, again revealed the arachnoid cyst. MR angiography of the neck was reported to be within normal limits.

In a neurosurgical consultation report submitted on June 9, 2006, Arthur I. Kobrine, M.D., recorded her statement that she had a history of occasional migraine headaches

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Seven

prior to the accident, but following that event the frequency and severity of her migraine headaches had increased, and that she was also complaining of numbness and tingling in her left arm. Dr. Kobrine attributed her left upper extremity symptoms to an ulnar nerve injury of her left elbow, and indicated that her strength, tone, reflex, and sensory examinations of both the upper and lower extremities were normal. He also discussed the relationship between her "preexisting congenital arachnoid cyst of the posterior fossa... and her post-injury headache symptom."

Prior to returning to see Dr. Lavine on August 18, 2006, Ms. Hoehne attended twelve additional therapy sessions between May 3, 2006 and August 3, 2006. Dr. Lavine referenced her left shoulder as the site of her main orthopedic complaint, and recorded a good range of shoulder motion with good strength and no evidence of a frozen shoulder. He made initial reference to "significant impingement on her exam." Ms. Hoehne again rejected his offer for a cortisone injection.

On some uncertain date in October of 2006, Dr. Lavine performed left shoulder surgery. No operative report has been provided for review. Ms. Hoehne attended five therapy sessions between October 13, 2006, and November 7, 2006. In a postoperative followup visit on November 8, 2006, Dr. Lavine indicated that she was making some progress, and that she would be continuing to attend physical therapy, and to return in a month. His report contained no information concerning the nature and extent of his operative procedure.

Ms. Hoehne then attended additional sessions until December 12, 2006. Following an interval of five months since her visit of November 8, 2006, she returned to see Dr. Lavine on April 9, 2007. Dr. Lavine indicated that her shoulder had improved significantly, with markedly decreased pain. He reported that she was still having occasional right knee soreness and pain with impact type of activities, but was better in this regard. She was still complaining of some persistent soreness and stiffness in her neck.

Physical examination of the shoulder revealed a full range of motion with good strength. Examination of her right knee revealed a full range of motion with no swelling, no medial or lateral jointline tenderness, and no crepitus. Examination of her neck revealed a full range of motion with supple muscles and an intact neurological status of her upper extremities. Dr. Lavine concluded that overall she had made excellent progress, that she would be performing a home exercise program, and would be returning to see him on an as needed basis. Dr. Lavine made no reference to any headache, left elbow, or ulnar nerve concerns.
\

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Eight

Dr. Kobrine's June 19, 2007 response to Attorney Edward L. Norwind's request, of June 5, 2007, represented the final medical document currently available for review. Dr. Kobrine attributed her left arm numbness to an injury of her ulnar nerve, and discussed the relationship between her headaches following this accident and the presence of her subarachnoid cyst. He referenced Ms. Hoehne's statement that "she did not consider the headaches to be debilitating enough at this time to consider surgical intervention to try to resolve them," and that he was recommending annual MRI studies for the rest of her life. He concluded his report with the statement, "at this time I am not prepared to assign a permanency to any of her symptoms, however, this opinion may change in the future as time goes on."

At the time of this IME, Ms. Hoehne described ongoing headaches and subjective complaints involving her neck, back, left shoulder, left upper extremity, right wrist, right knee, and her back and hips. She stated that she has generally reached a plateau of recovery regarding her right knee, with complaints that include walking with a limp, pain in the medial compartment area, diffuse popping and cracking, and swelling. She stated that she has been unable to perform any impact types of activities such as running, jumping, or vigorous walking, and that she has also had difficulty performing exercises on an elliptical machine. She stated that her medications have usually included Naprosyn, and to a lesser extent, Percocet or Vicodin. She stated that she has been performing exercises on a regular basis following her last therapy session at the end of December of 2006.

She stated that as far as the neck was concerned, she has had pain, tightness, and tension, extending from the left side into the trapezial area, and limited motion. She stated that she has had headaches on a daily basis, with some relief with Excedrin and Imitrex. She has no intention of undergoing any surgery for her subarachnoid cyst, but plans to see Dr. Kobrine in six months, and to have another MRI study in a year.

She also stated that she has continued to see Dr. Lavine every one to two months. She stated that as far as her right wrist is concerned, it feels weak when it gets inflamed with strenuous use. She stated that she has also had to be careful in the way she uses her wrist for activities such as typing.

She stated that she has numbness extending along the medial aspect of her left forearm into the fourth and fifth fingers whenever she rests her elbow on some type of surface, but that the fingers are "never right." She stated that when her symptoms are most severe, the pain involves the entire upper extremity for a number of hours. As far as the back and hips are concerned, she stated that she has generalized stiffness and achiness that becomes aggravated by exercise and periods of prolonged sitting or standing.

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Nine

the pain can extend to involve the entire upper extremity for a number of hours. As far as the back and hips are concerned, she stated that she has generalized stiffness and achiness that becomes aggravated by exercise and periods of prolonged sitting or standing.

**PHYSICAL EXAMINATION:** Ms. Hoehne estimated her height to be 5'4" and her weight to be 135 pounds. She demonstrated a normal gait pattern and no difficulty rising from a seated position or getting on and off of the examining room table.

Examination of her neck revealed some sensitivity to palpation in the left cervical, paraspinal, and trapezial areas with no associated spasm. She exhibited a full range of motion of her cervical spine, with some associated discomfort in all directions.

Examination of her left shoulder revealed sensitivity fairly well localized to the bicipital groove. There was no sensitivity in the left acromioclavicular joint or the subacromial regions. She complained of some pain in the bicipital groove region as she approached 170 degrees of abduction and flexion. She also complained of some discomfort in the left scapular region at that end range. Her rotation was excellent. The 3-cm scar on the anterolateral aspect of her left shoulder was well healed and non-sensitive. There was no weakness or atrophy of the rotator cuff or shoulder girdle musculature.

Examination of her left elbow revealed excellent and painless mobility, with 150 degrees of flexion, and full extension, pronation/supination. Tinel's testing of the cubital canal created some paresthesias in an ulnar nerve distribution extending to her fourth and fifth fingers. I was unable to confirm any dislocation of the ulnar nerve within the cubital tunnel. There was no intrinsic muscle atrophy or weakness of her hand.

Examination of her lumbar spine revealed some sensitivity in the midline at the lumbosacral junction. There was no paraspinal tenderness or spasm. Her lumbosacral mobility was excellent. She was able to easily touch her toes with her fingertips while bending at the waist with her knees straight. Straight leg raising was negative bilaterally.

Examination of her hips revealed full painless mobility. There was some sensitivity to palpation in the region of the left greater trochanteric region.

Examination of her right knee revealed full extension with further flexion to 135 degrees. There was no jointline tenderness, instability, effusion, or patellofemoral crepitus.

Examination of her right wrist revealed no restriction of motion or any areas of sensitivity, warmth, or swelling. Grip strength was symmetrical bilaterally.

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Ten

Neurological examination of her upper and lower extremities revealed no motor, sensory, or reflex deficits, with the exception of a decreased sensation along the medial aspect of her left forearm, and to a greater extent, in the fourth and fifth fingers.

**OPINION:** Based on the information contained in her above-referenced medical records and her current physical examination, it is my opinion that Ms. Hoehne has received an extraordinary amount of treatment for an expanding constellation of subjective complaints that have been disproportionate to objective findings. During her overnight hospitalization on March 16, 2005, Ms. Hoehne was treated for diagnoses limited to "multiple contusions and abrasions." She was also noted to be alert and oriented, and to exhibit no neurological deficits. Examination of her shoulders, wrists, elbows, hips, and knees revealed normal muscle strength. Radiographic studies of her cervical, thoracic, and lumbar spines, right knee, right wrist, and pelvis, as well as CT studies of her head, abdomen, and pelvis were negative for signs of acute trauma.

On March 23, 2005, Robert Dugas, M.D., who had performed arthroscopic surgery of the same right knee for post-traumatic tears of her medial meniscus and anterior cruciate ligament on March 25, 1997, concluded that there did not appear to be any bony deformities or ligamentous injuries associated with her symptoms, and that her "bilateral knee pain should resolve."

In my opinion, no causal relationship has been established between this incident and the medical necessity for her right knee surgery. In my opinion, Ms. Hoehne's pre-operative subjective complaints lacked clinical correlation with the operative finding of chondromalacia of the lateral tibial plateau, and with Dr. Lavines's failure to identify a tear of the medial meniscus that he had considered the "likely cause of her persistent knee pain." In my opinion, residuals of her prior lateral meniscal tear represented a medically reasonable explanation for the degenerative change in the same compartment; and Dr. Lavine's observation that the "anterior cruciate ligament looked peculiar as if she had had a previous injury with slight laxity of the ligament, and some narrowing and tightness of the intercondylar notch," was consistent with her prior tear of the same structure.

In my opinion, the medial plica that Dr. Lavine "initially ignored" when he explored the knee was clearly an unrelated incidental finding. Furthermore, tables 62 and 64 in the AMA Guides fail to substantiate the basis for Dr. Lavine's permanency ratings for chondromalacia of the lateral tibial plateau and the medial plica.

In my opinion, no causal relationship has been established between this bus incident and the medical necessity for her left shoulder surgery. On March 21, 2005, Dr. Lavine, and

Case 1:06-cv-02227-RBW    Document 7-2    Filed 09/06/2007    Page 11 of 12

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Eleven

on March 23, 2005, Dr. Dugas made no mention of her left shoulder as a site clinical concern. On April 4, 2005, Dr. Lavine recorded a good range of left shoulder motion and good strength of the rotator cuff. In my opinion, the "slightly low-lying acromion and fairly early changes of AC joint arthrosis and cystic changes in the area of the posterior humeral head," identified in the left shoulder MRI study of April 28, 2005, represented pre-existing structural/degenerative findings that were unaffected by this incident. Furthermore, the rotator cuff and subscapularis tendons were intact, the long head of the biceps tendon was normal, and there was no evidence of any instability, fracture, or joint effusion.

On October 31, 2005 and December 7, 2005, Dr. Lavine recorded a full range of motion of her shoulder with supple muscles, good rotator cuff strength, and negative impingement testing. On February 6, 2006, Dr. Lavine again reported a good range of shoulder motion. In a "discharge summary and disability rating" report, submitted on February 7, 2006, Dr. Lavine did not specifically mention the left shoulder among the areas of concern.

Even when Dr. Lavine made initial reference to "significant impingement on her shoulder exam" on August 18, 2006, he recorded a good range of shoulder motion with good strength and no evidence of a frozen shoulder. It is difficult to understand why Ms. Hoehne rejected his offers for cortisone injections, yet agreed to undergo surgery on some uncertain date in October of 2006. I would welcome the opportunity to review the operative note.

As far as the right wrist is concerned, considering that the arthroscopic evaluation of her right wrist on May 19, 2005 accomplished Dr. Barth's intention to rule out a "partial scapholunate ligament injury and a TFCC tear," and that in a "discharge summary and disability rating" report submitted on February 7, 2006, Dr. Lavine considered it "critically important that she had an intact scapholunate ligament and triangular fibrocartilage complex (right wrist)," it is difficult to appreciate the clinical significance of the incidental findings of a hypertrophied dorsal capsule and a grade I chondral lesion of the hamate. I was also unable to currently confirm findings of right wrist weakness that had been recorded by Dr. Barth in his rating report of November 30, 2005.

In my opinion, Ms. Hoehne's subjective complaints referable to her neck and left upper extremity were clearly disproportionate to objective findings. Not only did Dr. Lavine's reports consistently fail to include the left elbow as the site of any trauma, but on May 2, 2005, Dr. Lavin reported that "the arm pain seemed to have improved and dissipated." On May 23, 2005, Dr. Lavine indicated that her neck had improved, with no significant residual symptoms. In his electrodiagnostic study report from the Neurology Center on

Independent Medical Evaluation
Jena Hoehne
August 23, 2007
Page Twelve

January 26, 2006, Dr. Blazina reported that there was no evidence of any cervical radiculopathy, brachial plexopathy, or peripheral neuropathy involving the radial, ulnar, or median nerves.

On February 6, 2006, after reporting that her physical examination was essentially unchanged, with a good range of neck motion and no neurological deficits, Dr. Lavine concluded that he "really cannot explain her persistent radicular symptoms in the face of a negative MRI and negative EMG." In his reports from the Neurology Center on March 27, 2006 and April 25, 2006, Dr. Herzfeld reported that her head, spine, and neurological examinations were normal, and that there was no cervical MRI evidence of disc herniation, stenosis, or neural foraminal narrowing.

In my opinion, not only has there been no documentation that headaches had been any of significant clinical concern subsequent to this event, but any trauma that she may have sustained to her head was clearly of insufficient magnitude to have aggravated any preexisting subarachnoid cyst that was incidentally identified on her MRI study. The pre-existing nature of her migraine headaches has also been well documented. Furthermore, in my opinion, no causal relationship has been established between this incident and any diagnosis of ulnar neuropathy, initially recorded by Dr. Kobrine on June 9, 2006, fifteen months following the incident.

Considering her current examination, and the fact that when she returned to see Dr. Lavine on April 9, 2007, following an interval of five months since her visit of November 8, 2006, he reported that examination of the shoulder revealed a full range of motion with good strength, that examination of her right knee revealed a full range of motion with no swelling, no medial or lateral jointline tenderness, and no crepitus, that examination of her neck revealed a full range of motion with supple muscles and an intact neurological status of her upper extremities, that overall she had made excellent progress, and that she would be returning to see him on an as needed basis, the physical basis of her current constellation of subjective complaints has not been objectively substantiated.

In conclusion, it is my opinion that Ms. Hoehne has sustained no permanent impairment of function or need for any future treatment relating to this Metro bus incident, and that her clinical pattern suggests symptom magnification.

These opinions have been submitted within a reasonable degree of medical certainty.

Richard H. Conant, M.D., F.A.C.S.
RHC/mts/ssg/00165679

# Richard H. Conant, M.D., F.A.C.S.

*Chevy Chase Building*
*5530 Wisconsin Avenue, Suite 1660*
*Chevy Chase, MD  20815-4430*

*301-657-9876*

**Board Certification:** American Board of Orthopaedic Surgery, 1971
American Board of Forensic Medicine, 1995

**State Licensures:** Maryland, District of Columbia, Pennsylvania and New Jersey

**Professional Appointments:** Georgetown University Medical Center, Washington, D.C.
*Assistant Professor of Surgery (Orthopedic Surgery), 1975 - present*
American University, Washington, D.C.
*Team Physician, 1972 - 1989*

**Hospital Staff Appointments:** Sibley Memorial Hospital, Washington, D.C.
*Senior Attending*
*Executive Committee of the Medical Staff, 1984 - 1986*
Suburban Hospital, Bethesda, MD

**Professional Societies:** American Academy of Orthopaedic Surgeons, 1973
American College of Surgeons, 1972

**Medical Societies:** Montgomery County Medical Society, 1969 - present
Medical Society of State of Maryland (Med Chi) 1969 - present
Board of Physician Quality Assurance Consultant

**Education:** Rutgers University, New Brunswick, NJ
*B.A., Biological Sciences, cum laude, 1959*
State University of New York, College of Medicine, Syracuse, NY
*M.D., 1963*
Harvard Medical Center, Beth Israel Hospital, Boston, MA, 1963 - 1965
*Internship, General Surgery, 1963 - 1964*
*Residency, General Surgery, 1964 - 1965*
Georgetown University Medical Center, Washington, D.C.
*Residency, Orthopedic Surgery, 1967 - 1969*

**Military Service:** U.S. Air Force (Captain), Shepherd AFB, Wichita Falls, TX
*Orthopedic Surgical Service, 1965 - 1967*

**Awards:** AMA Physician's Recognition Award (CME)
Georgetown University Vicennial Award

**Publication:** GP. "Spondylolisthesis," 1969

01/07

American Board of
Orthopaedic Surgery

American Academy of
Orthopaedic Surgeons

# Richard H. Conant, M.D., F.A.C.S.

*Chevy Chase Building*
*5530 Wisconsin Avenue • Suite 1660*
*Chevy Chase, Maryland • 20815-4430*

*301-657-9876 • (Fax) 664-5979*

## 2006 TRIAL TESTIMONY

### Circuit Court
### Montgomery County, Maryland

Augustina Enweze vs. Nguyen
Jean Byrnes vs. Shawn C. Jenkins
Silk vs. Liegerman
David Lowey vs. Giant Food et.al
Sandra Lozano-Rosa vs. Archdiocese of Washington*
Cecelia Ferguson vs. Marianne Henderson*
Board of Ed. of MC vs. Anita Murphy*
Farhad Arshadi vs. Langille*
Lesniewski vs. Silverberg, et al

### Superior Court of the District of
### Columbia, Washington, D.C.

Robert Todd vs. Michael Thomas*
Angela Jones vs. JBG Companies
Akinmolayan vs. Robert Smith*
Guzman vs. WMATA
Sims vs. WMTA*

### Circuit Court
### Anne Arundel County, Maryland

Yvette S. Woods vs. Vernon F. White, Jr.*

### Circuit Court
### Calvert County, Maryland

Dana A. Christ vs. State Farm Insurance
Company and Michael B. Richards*

Page 2

# 2006 Trial Testimony

**Circuit Court**
**Prince George's County, Maryland**

Robert Graham vs. Gary Staples
David Lowey vs. Giant Food et.al
Braylovskiv vs. Mays
Saleh vs. Gonzalez-Cantatrero
Cindy L. Tetreault vs. Lynn G. McKee*

**Circuit Court**
**Baltimore City, Maryland**

Jennifer Beatty vs. State Farm Ins.*
Mark Thanner vs. Drumcastle Apts.*
Letitia Downer vs. State Farm Ins.

**Circuit Court**
**Frederick County, Maryland**

Zewudu vs. Frederick Memorial Hospital*

*Video Deposition

American Board of
Orthopaedic Surgery

American Academy of
Orthopaedic Surgeons

# Richard H. Conant, M.D., F.A.C.S.

*Chevy Chase Building*
*5530 Wisconsin Avenue • Suite 1660*
*Chevy Chase, Maryland • 20815-4430*

*301-657-9876 • (Fax) 664-5979*

## 2005 TRIAL TESTIMONY

**Circuit Court**
**Montgomery County**

Doulaveris v. Martinez
Bette McMahon v. James Foley
Steve Agoussi, et al. v. WMATA
Fay Reed-Houser, et al. v. Kathleen Prada, et al.*
Dumais v. Hodge*
Stevenson v. Terrell*
Courtney v. State Farm Ins. Co.

**Superior Court of the**
**Circuit Court**
**District of Columbia**

Kenzie Locke v. Elizabeth A. Nino
Raul Torres-Caballeros, et al. v. Dina Martinez*
Alvena Johnson/Ralph Smith v. William Loza
Jeffrey H. Moser v. RLA Revitalization Corp.

**Circuit Court**
**Anne Arundel County**

Sofield v. Garnicki

**Circuit Court**
**Prince George's County**

Gary Croson v. William M. Kreuter, et al.
Cruz and Yolanda Falcon v.
George Sturgis v. ?*

*De Bene Esse Video Deposition

**United States District Court**
**for the District of Maryland**

Pauline T. Agostinelli, et al. v
James A. Gaske, et al.*

**Circuit Court**
**Carroll County**

Shirley DeJoseph v. McDaniel College*

**Circuit Court**
**Baltimore City**

Winstead v. Payne

**Circuit Court**
**Frederick County**

Moss v. Slonaker*

**Circuit Court**
**Cabell County, WV**

Ezra C. Brogan v. ?

**Country Court at Law, Number Three**
**El Paso County, Texas**

Thomas Paul Wagner, Jr.*

American Board of
Orthopaedic Surgery

American Academy of
Orthopaedic Surgeons

## Richard H. Conant, M.D., F.A.C.S.

*Chevy Chase Building*
*5530 Wisconsin Avenue • Suite 604*
*Chevy Chase, Maryland • 20815-4430*

*301-657-9876 • (Fax) 664-5979*

# 2004 Trial Testimony

**Circuit Court**
**Prince George's County**

Eisele/Hipple v. Fish, et al

**Circuit Court**
**Calvert County**

John S. Coppin v. Robert McNally

**Superior Court of the**
**District of Columbia**

Sherry Washington v. District of Columbia*
Joanne Beck v. U.S. Chamber of Commerce
Richard Phillips Jr. v. ?

**Circuit Court**
**Jefferson County, Kentucky**

Norton v. Kentucky Tie and
Lumber Co.

**Circuit Court**
**Montgomery County**

Priscilla M. Langston v. Ronaldy Clark, et al.
Eslami v. Rodriguez*
Sean Ryan et al v. Theresa Krawczyk*
Kornegay v. Murrell*
Powell v. Estate of Robert Haas*

**Circuit Court**
**Frederick County**

Adam Seek v. Michael Milan*

**Circuit Court**
**Carroll County**

Sanner v. Belt*

**Circuit Court**
**Cherokee County, NC**

Florica Spence v. James Lipsey

(* Deposition Testimony)

American Board of
Orthopaedic Surgery

American Academy of
Orthopaedic Surgeons

## Richard H. Conant, M.D., F.A.C.S.

*Chevy Chase Building*
*5530 Wisconsin Avenue • Suite 604*
*Chevy Chase, Maryland • 20815-4430*

*301-657-9876 • (Fax) 664-5979*

### 2003 COURT APPEARANCES

Circuit Court
Anne Arundel County, Maryland

Superior Court of the District of Columbia
Washington, D.C.

Sofield v. Garnicki

Hostler v. Big Stuff, Inc.

Circuit Court
Montgomery County, Maryland

Circuit Court
Frederick, Maryland

Potric v. ?
Tesfamariam v. Ivanchevitch

Robins v. Hollas

American Board of
Orthopedic Surgery

American Academy of
Orthopaedic Surgeons

### Richard H. Conant, M.D., F.A.C.S.

*Chevy Chase Building*
*5530 Wisconsin Avenue • Suite 604*
*Chevy Chase, Maryland • 20815-4430*

*301-657-9876 • (Fax) 664-5979*

## COURT APPEARANCES
## 2002

**Circuit Court**
**Montgomery County**

Anita Rivas vs. Stacey Williams

**Circuit Court**
**Prince George's County**

Iyoha v. State Farm

**Circuit Court**
**Frederick, Maryland**

Lenora Minton Hamm vs. Vanesa Palma

**Circuit Court**
**Birmingham, Alabama**

Helen Zaden vs.    ?

**SUPERIOR COURT**
**District of Columbia**

Lane v. Newby